IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 13-21804 |
| T-L BRYWOOD LLC, | ) | Chapter 11 |
| a Delaware Limited Liability Company | ) | Judge J. Philip Klingeberger |
| | ) | |
| Debtor/Debtor-in-Possession. | ) | |

## **DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT**

**DEBTOR'S COUNSEL**:
David K. Welch, Esq. (Illinois Atty. No. 06183621)
Arthur G. Simon, Esq. (Illinois Atty. No. 03124481)
Jeffrey C. Dan, Esq. (Illinois Atty. No. 06242750)
Brian P. Welch, Esq. (Illinois Atty. No. 6307292)
Crane, Heyman, Simon, Welch & Clar
135 South LaSalle Street, Suite 3705, Chicago, IL 60603
TEL: (312) 641-6777 - FAX: (312) 641-7114

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 13-21804 |
| T-L BRYWOOD LLC, | ) | Chapter 11 |
| a Delaware Limited Liability Company | ) | Judge J. Philip Klingeberger |
| | ) | |
| Debtor/Debtor-in-Possession. | ) | |

## DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT

T-L BRYWOOD LLC, Debtor/Debtor-in-Possession, by and through its Attorneys, submits

this Third Amended Disclosure Statement ("Disclosure Statement") pursuant to Section 1125 of the

Bankruptcy Code and in conjunction with its Second Amended Plan of Reorganization ("Plan").

A copy of the Plan is attached to this Disclosure Statement as **Exhibit A**.[1]

## INTRODUCTION

On March 12, 2012, the Debtor filed its voluntary petition for relief under Chapter 11 of the

Bankruptcy Code. On May 14, 2013, an Order was entered transferring the venue of the Debtor's

Chapter 11 case to this Court. The Debtor is operating its business and managing its financial affairs

as Debtor-in-Possession pursuant to Sections 1101, 1107 and 1108 of the Bankruptcy Code. No

trustee, examiner or committee of unsecured creditors has been appointed to serve in this

reorganization case. The Debtor is the owner of a commercial shopping center located in Kansas

City, Missouri known as the "Brywood Center" ("Brywood Shopping Center").

The Debtor is the proponent of the Plan. The Plan provides for distributions to the holders

of Allowed Claims from funds realized from the continued operation of the Debtor's business as

well as from existing cash deposits and cash resources of the Debtor. To the extent necessary, the

---

[1]Capitalized terms not defined in this Disclosure Statement shall have the meanings ascribed to
them in the Plan.

payment of the Allowed Secured Claims, as provided for in the Plan (except for monthly interest payments), may be made from the proceeds of refinancing and/or the sale of the Debtor's assets (or some portion thereof).

RCG-KC Brywood, LLC, ("RCG"), the Debtor's primary secured lender, has filed a Second Amended Plan of Reorganization ("Competing Plan") and a supporting Disclosure Statement ("Competing Disclosure Statement"). The Debtor will object to Confirmation of the Competing Plan filed by RCG as the Debtor believes that RCG's Competing Plan is legally unconfirmable and is not in the best interests of creditors and equity security holders. The Bankruptcy Court will conduct a simultaneous hearing on Confirmation of the Debtor's Plan and RCG's Competing Plan after voting on such Plans by creditors and equity security holders. All creditors, equity security holders and other interested parties will receive notice and instructions relating to voting on the Debtor's Plan and RCG's Competing Plan, filing objections to Confirmation of the Debtor's Plan and RCG''s Competing Plan and the scheduling of the simultaneous hearing on Confirmation of such Plans.

## SUMMARY OF TREATMENT OF CLAIMS
## AND INTERESTS UNDER THE PLAN

The Plan has one (1) category of Administrative Claims, one (1) category of Tax Claims, 7 Classes of creditors (Classes 1 through 7) and one (1) Class of Interests (Class 8). These Claims and Interests, and the treatment thereof, under the Plan consist of the following:

**Administrative Claims**[2]

Administrative Claims are provided for in Article IV, Section 4.1 of the Plan, are unimpaired

---

[2] Since the Debtor's Chapter 11 Case was commenced as a voluntary proceeding, no claims under Sections 507(a)(3) and 502(f) of the Bankruptcy Code exist.

-2-

under the Plan and primarily consist of Allowed Claims comprised of fees and expenses of professionals retained pursuant to Orders entered by the Bankruptcy Court. These fees and expenses are projected as follows:

| Professional | Amount[3] |
|---|---|
| Crane, Heyman, Simon, Welch & Clar, Debtor's Counsel | $250,000.00 |
| Burke, Warren, MacKay & Serritella, Debtor's Special Counsel | $ 90,000.00 |

The amounts projected to professionals holding Allowed Administrative Claims are in addition to amounts previously paid as pre-petition retainers and any interim allowances made by the Bankruptcy Court to such professionals. These amounts previously paid to Debtor's professionals were as follows:

| Professional | Aggregate Amount Previously Paid | Basis for Prior Payment |
|---|---|---|
| Crane, Heyman, Simon, Welch & Clar Debtor's Counsel | $293,059.96 | Pre-Petition Retainer and Court-approved interim compensation |
| Burke, Warren, MacKay & Serritella, Debtor's Special Counsel | $77,480.55 | Pre-Petition Retainer and Court-approved interim compensation |

No professional shall be paid unless and until the Bankruptcy Court has entered appropriate Orders allowing the compensation and reimbursement of expenses requested by such professionals.

---

[3] These amounts are merely the Debtor's estimates and are, therefore, subject to change. Furthermore, in projecting these amounts, the Debtor is not accounting for a contested Confirmation hearing. In light of the filing of the Competing Plan and Competing Disclosure Statement by RCG, there is a reasonable likelihood of a contested Confirmation hearing. In the event of such a contested Confirmation hearing, Administrative Claims of professionals will increase to cover additional attorneys fees and expert witness fees.

-3-

Under the Plan, the Claims of professionals, after credit for retainers and other payments authorized by the Bankruptcy Court during the course of this Chapter 11 case, are payable upon allowance by the Bankruptcy Court.

Also included in this category of Administrative Claims are post-petition trade payables and post-petition real estate taxes. Under the Plan, post-petition trade payables and post-petition real estate taxes will be paid in the ordinary course of business from available existing cash resources of the Debtor. The Debtor is current in its payments to its post-petition creditors, including vendor and real estate tax claims. Under the Plan, the Debtor intends to assume its lease at the Brywood Shopping Center with Planet Fitness. There is an existing monetary default under the Planet Fitness Lease which must be paid by the Debtor as a condition of the assumption of this lease. The monetary default is approximately $200,000.00 ("Planet Fitness Administrative Claim") and constitutes an Administrative Claim under the Plan. Pursuant to the Plan, the Debtor will pay the Planet Fitness Administrative Claim on or about the Effective Date.

Other than post-petition trade payables, all Administrative Claims, to the extent allowed and subject to the limitations set forth in the Plan, will be paid in full in cash on the Effective Date or as soon as practicable thereafter (and in the case of professionals, after allowance by the Bankruptcy Court) or as agreed to by the holder of each Allowed Administrative Claim. The source of funds for payment of such Administrative Claims will be the existing cash resources of the Debtor or such other cash as may be generated by the Debtor from the operation of its business in the ordinary course.

## Tax Claims

The Plan has a specific provision for the payment of taxes which are of the type entitled to priority under Section 507(a)(8) of the Bankruptcy Code (Article IV, Section 4.2 of the Plan). The Plan provides that to the extent any Tax Claim is allowed, such Tax Claims shall be paid in full, in cash, inclusive of interest at the applicable statutory interest rate, on the Effective Date, unless the holder of a Tax Claim agrees to a different treatment. This treatment of Allowed Tax Claims is intended to comply with the requirements of Section 1129(a)(9)(C) of the Bankruptcy Code. The Debtor believes that there are no Allowed Tax Claims.

## Class 1 Claim

RCG is the holder of the Allowed Class 1 Claim. For purposes of this Plan, the allowed amount of the Class 1 Claim is $8,350,000.00 (which amount includes the value of all collateral of RCG) or such other amount as may be established by Order of the Bankruptcy Court.[4] RCG will retain its pre-petition and post-petition liens on the Debtor's assets. Commencing in the month following the Effective Date and continuing monthly thereafter until the Allowed Class 1 Claim is paid in full, the Debtor shall make monthly interest payments to RCG calculated at the annual interest rate of 5%. The balance of the principal amount of the Allowed Class 1 Claim shall be paid on or before 5 years following the Effective Date.

The Debtor shall have the right to prepay the Allowed Class 1 Claim in whole, or in part, at any time following Confirmation, without penalty. In the event of such prepayment, any and all

---

[4]The Debtor and RCG disagree as to the allowed amount of the Class 1 Claim. This dispute will be heard and determined at the Confirmation hearing unless resolved prior thereto by the Debtor and RCG.

-5-

unearned interest shall be deemed waived. Upon Confirmation, any and all prepayment premiums and any such other requirements set forth in the underlying loan documents shall also be waived and released. The Debtor shall pay all real estate taxes arising after Confirmation and insurance premiums when such payments are due. The terms of the Plan shall be the exclusive terms relating to the repayment of the Allowed Class 1 Claim. The pre-petition loan documents of RCG shall have no force or effect after Confirmation. Upon completion of the payments to the holder of the Allowed Class 1 Claim as required by the Plan, RCG shall be deemed to have released any and all liens on the Debtor's assets. To the extent required by the Debtor, upon full payment of its Allowed Class 1 Claim, RCG shall immediately prepare and file any document necessary to effect a release of its liens on the Debtor's assets. In the event that RCG fails to file such documents evidencing the release of RCG's liens on the Debtor's assets, the Debtor is expressly authorized to prepare and file such release documents. The source of payment for the monthly interest payments applicable to the Allowed Class 1 Claim will be existing cash resources of the Debtor or such other cash as may be generated by the Debtor from the operation of its business in the ordinary course. The source of payment of the Allowed Class 1 Claim will be from funds realized from the continued operation of the Debtor's business and/or from proceeds of refinancing and/or the sale of the Debtor's assets (or some portion thereof).

**Class 2 Claim**

The JC Collector, the holder of the Allowed Class 2 Claim, will retain its lien on property of the Debtor and will be paid in full in cash on the Effective Date or as soon as practicable thereafter. The Debtor estimates that the allowed amount of the Class 2 Claim is approximately $85,000.00. The source of payment of the Allowed Claim 2 Claim will be existing cash resources

-6-

of the Debtor or such other cash as may be generated from the operation of its business in the ordinary course.

## Class 3 Claim

RCG is the holder of the Allowed Class 3 Claim.  The Debtor estimates that the Class 3 Claim may be allowed in the amount of $3,908,454.70.[5]  In full satisfaction, settlement, release and discharge of each and every Allowed Class 3 Claim, the holder thereof shall be paid the sum of $756,137.48 on the Effective Date payable from the application of the Post-Petition Payments.[6]

## Tenant Claims

Tenants at the Brywood Shopping Center may have provided security deposits to the Debtor in conjunction with their leases with the Debtor.  The Plan has a specific provision relating to these Tenant Claims for security deposits (Article V, Section 5.2 of the Plan).  These Class 4 Claims are unimpaired under the Plan.

In full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Claim in Class 4, each holder of an Allowed Tenant Claim shall be paid in full in cash as required by the underlying lease between the Debtor and the Class 4 Claim holder. The Debtor shall timely perform all obligations due from it under the terms of the underlying leases. The source of payment for the Allowed Tenant Claims  will be existing cash resources of the Debtor or such other cash as may be generated by the Debtor from the operation of its business in the ordinary

---

[5]For purposes of this Disclosure Statement, the amount of the Allowed Class 3 Claim was calculated by deducting the estimated amount of the Allowed Class 1 Claim ($8,350,000.00) from the total amount of the proof of claim filed by RCG ($12,258,454.70).

[5]Any payments made by the Debtor to RCG or its predecessor pursuant to Section 362(d)(3) of the Bankruptcy Code and/or pursuant to any Order entered by the Bankruptcy Court are referred to in this Plan as the "Post-Petition Payments."

course.

**Unsecured Creditors Exclusive of Insider Claims,
Deficiency Claim of RCG and Noteholder Claims**

Unsecured Creditors exclusive of Insider Claims, the holder of Allowed Claims in Class 3 and Noteholder Claims in Class 6 are the holders of Allowed Class 5 Claims and are impaired under the Plan ("Unsecured Claims"). The Debtor estimates that the aggregate amount of Allowed Class 5 Claims is approximately $133,647.63. The treatment of the Allowed Class 5 Claims is set forth in Article VI, Section 6.3 of the Plan. Under the Plan, the holders of Allowed Class 5 Claims, in full satisfaction, settlement, release, and discharge of and in exchange for each and every Allowed Class 5 Claim, shall be paid 100% of the allowed amount of such Class 5 Claims in cash within 120 days of the Effective Date or as soon as practicable thereafter. The source of payment for payment of the Allowed Class 5 Claims will be existing cash resources of the Debtor or such other cash as may be generated by the Debtor from the operation of its business in the ordinary course.

**Noteholder Claims**

Noteholder Claims are the Allowed Class 6 Claims, are provided for in Article VI, Section 6.4 of the Plan and are estimated to be in the aggregate amount of $998,904.00. In full satisfaction, settlement, release and discharge of and in exchange for each and every Class 6 Claim, each holder of an Allowed Class 6 Claim shall be paid 100% of the allowed amount of such Class 6 Claims in cash as follows:

a)   50% of the Noteholder Claims paid within 90 days of the Effective Date ("Initial Noteholder Payment"); and

b)   5% of the balance of the Noteholder Payments paid within 90 days of the Initial Noteholder Payment and 5% of the balance of the Noteholder Payments every 90 days thereafter until Allowed Class 6 Claims are paid in full.

The source of payment for payment of the Allowed Class 6 Claims will be existing cash resources of the Debtor or such other cash as may be generated by the Debtor from the operation of its business in the ordinary course.

The holders of the Allowed Class 6 Claims are: Millennium Trust Company, LLC Custodian FBO Frank B. Chauner ($62,431.51); Millennium Trust Company, LLC, Custodian FBO Radley Pearsall ($124,863.01); Millennium Trust Company, LLC, Custodian FBO Stuart Pinkert ($624,315.07) and T-L Catonsville Pro LLC ($187,294.52). The Noteholder Claims are not held by Insiders, although RCG contends that the holders of the Noteholder Claims qualify as Insiders.

**Insider Claims**

Insiders[7] are the holders of Allowed Class 7 Claims and are impaired under the Plan. The Debtor estimates that the aggregate amount of Insider Claims is approximately $836,371.07. Insider Claims are provided for in Article VI, Section 6.5 of the Plan. Pursuant to Article VII, Section 7.1 of the Plan, all Claims of Insiders are voluntarily subordinated to Allowed Claims in Classes 1 through 6, shall not share in any distributions to the holders of Allowed Unsecured Claims as required by the Plan and shall receive no distributions under the Plan unless and until the Allowed Claims in Classes 1 through 6 are paid in full as required by the Plan or until the holder of the Allowed Class 1 Claim agrees otherwise, whichever occurs sooner. The holders of the Allowed Class 7 Claims are: Tri-Land Holdings, Inc. ($364,002.00); and Tri-Land Properties, Inc. ($472,369.07). The source of payment for the Allowed Class 7 Claims will be existing cash resources of the Debtor or such other cash as may be generated by the Debtor from the operation of

---

[7]The term "Insiders" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

its business in the ordinary course.

**Interests**

  The member of the Debtor ("Member") is the holder of the Allowed Class 8 Interest. The existing Interest in the Debtor will be cancelled upon Confirmation of the Plan. Upon Confirmation of the Plan, a new membership interest in the Debtor will be issued to a joint venture in exchange for the joint venture's commitment to invest up to $4,200,000.00 in new capital to further develop, maintain and lease the Brywood Shopping Center. This joint venture will be structured similarly to those joint ventures involving other related cases previously pending in this Court that have concluded through the implementation of successful Chapter 11 exit strategies.[8]

  Specifically, the joint venture that will own the Reorganized Debtor under the Plan, either directly or through a wholly-owned subsidiary, will be IP-Tri-Land II, LLC (IP Tri-Land). IP Tri-Land is an existing Delaware limited liability company that currently owns Salem Gate Shopping Center in Conyers, Georgia and The Crossings at Four Corners located in Smyrna, Georgia. Those shopping centers were previously owned by T-L Conyers LLC and T-L Smyrna LLC respectively, which were debtors in two related Chapter 11 cases previously pending in this Court. IP Tri-Land also acquired the first mortgage position of MB Financial Bank, N.A. in Cherokee South Shopping Center, which is currently owned by T-L Cherokee South LLC, a debtor in another related Chapter 11 case previously pending in this Court, and will shortly obtain title to that shopping center through

---

[9]These Chapter 11 cases are: *In Re Century Plaza LLC,* Case No. 11-24075; *In Re T-L Conyers LLC*, Case No. 13-20280; *In Re T-L Smyrna LLC,* Case No. 13-20282; *In Re T-L Cherokee South LLC*, Case No. 13-20283 and *In Re T-L Village Green LLC*, Case No. 13-20284. In the *Century Plaza* case, this Court confirmed the Debtor's Plan of Reorganization. In the *Conyers*, *Smyrna* and *Cherokee South* cases, the Debtors successfully refinanced their mortgage obligations and settled all disputes with their mortgage lender thereby enabling them to voluntarily dismiss their Chapter 11 cases. In the *Village Green* case, the Debtor conducted a sale of its shopping center and settled all disputes with its mortgage lender thereby enabling it to voluntarily dismiss its Chapter 11 case.

a deed-in-lieu-of-foreclosure agreement approved by this Court in that prior related case. The Debtor and the debtors in all of the prior related cases mentioned above were managed by Tri-Land Properties, Inc. ("Tri-Land").

IP Tri-Land is a joint venture of Tri-Land Profits Interest II LLC ("TLPI") and Iron Point Tri-Land Holdings II, LLC ("IP Holdings"). IP Holdings is one of a number of real estate private equity funds that invest in opportunistic real estate transactions throughout the United States and North America that are sponsored and managed by Iron Point Partners, LLC ("Iron Point") and supported by more than $2 billion of raised capital. Iron Point is completely independent from the Debtor, Tri-Land and their respective affiliates and has elected to invest in projects managed by Tri-Land or its affiliates because the types of redevelopment opportunities in which Tri-Land and its affiliates specialize are within Iron Point's investment profile and Iron Point has confidence in the Tri-Land group's redevelopment and management acumen.

IP Tri-Land's interest in the Debtor will be acquired in exchange for IP Tri-Land's commitment, funded through capital contributions of IP Holdings, to provide the equity needed to complete the redevelopment and lease-up of Brywood Shopping Center, projected to be as much as $4.2 million. The determination of how much of the $4.2 million committed by IP Holdings will actually be utilized will depend upon the timing and costs of the redevelopment and lease-up programs needed by Brywood Shopping Center after Confirmation of the Plan.

IP Holdings will control all major decisions of the joint venture. IP Holdings will receive, in exchange for providing the necessary capital, repayment in full of all of its invested equity plus a preferential return on its invested equity plus not less than 60% of the remaining net sale proceeds, if any, upon the sale of The Brywood Shopping Center. TLPI will receive the balance of the net sale

-11-

proceeds, if any. Tri-Land Kansas City Investors LLC, the current member of the Debtor, will hold a membership interest in TLPI entitling it to a 70% share of TLPI's profits, if any are realized, from the ultimate sale of Brywood Shopping Center but will exercise no control over IP-Tri-Land or TLPI.

**Claims Objections**

Except as otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan, the Debtors shall file any and all objections to the allowance of Claims or Interests on or within one hundred and twenty (120) days of Confirmation unless extended by Order of the Bankruptcy Court. Cause shall not be a requirement for an extension of this deadline.

## PURPOSE OF DISCLOSURE STATEMENT

This Disclosure Statement is provided to all of the known holders of Claims against and Interests in the Debtor who are entitled to vote their acceptance or rejection of the Plan. This Disclosure Statement is disseminated in connection with the solicitation of acceptances of the Plan filed by the Debtor. The purpose of this Disclosure Statement is to provide such information as would enable a hypothetical, reasonable investor, typical of the holder of Claims and Interests which are impaired under the Plan, to make an informed judgment about the Plan.

The information contained in this Disclosure Statement has been submitted by the Debtor unless specifically stated to be from other sources. No representations concerning the Debtor or the Plan, other than those set forth in this Disclosure Statement, have been authorized by the Debtor. The Debtor believes that all of the information contained in this Disclosure Statement is accurate. However, the Debtor is unable to warrant that there are no inaccuracies.

Under the Bankruptcy Code, a Class of Claims is considered to have accepted the Plan if both a majority in number and two-thirds (2/3) of the dollar amount of those actually voting vote to accept the Plan. The Claims of those who do not vote are not counted in determining whether the requisite statutory majority in number and dollar amount have voted for acceptance. Acceptance by the statutory majority will bind the minority who dissent and those who fail to vote.

**The Plan requires that the holders of Allowed Claims in Classes 1, 3, 5, 6 and 7 and the Allowed Interest in Class 8 vote on Confirmation of the Plan.**

## HISTORY AND BACKGROUND

The Debtor is a Delaware limited liability company that is the owner of the Brywood Shopping Center. The Debtor's property manager is Tri-Land Properties, Inc. ("Tri-Land"). The Debtor has entered into a Management and Development Agreement with Tri-Land pursuant to which Tri-Land acts as property manager, exclusive leasing agent, developer with respect to the addition of new tenant space or the redevelopment of the Brywood Shopping Center including any existing tenant space, and exclusive agent to offer the Brywood Shopping Center for sale (when so directed by the Debtor). The Debtor's Member is Tri-Land Kansas City Investors LLC ("TKC"). TKC is a Delaware limited liability company formed on July 17, 2006, for the purpose of being the sole Member of the Debtor. Tri-Land has filed its own separate Chapter 11 case in this Court, case number 12-22623.

The Debtor was formed for the purpose of acquiring, owning, operating, and redeveloping the Brywood Shopping Center. The Debtor acquired the Brywood Shopping Center in 2006. The

-13-

Brywood Shopping Center is located at the northeast corner of Missouri Highway 350 and 63rd Street on the border of Kansas City and Raytown, Missouri, approximately 10 miles southeast of downtown Kansas City, Missouri. The Brywood Shopping Center is built on 25.65 acres of land and is currently improved with 3 buildings totaling approximately 183,000 square feet. As of the filing of the Debtor's Chapter 11 case, the Brywood Shopping Center had an occupancy rate of approximately 80%.

Tri-Land also acts as the corporate Manager of TKC and the Debtor. Tri-Land's principal office is located at I East Oak Hill Drive, Suite 302, in Westmont, Illinois, a near-western suburb of Chicago. Tri-Land was founded in 1978 and is a full-service commercial real estate development company specializing in the strategic redevelopment of underutilized, under-performing retail properties. Tri-Land also develops new retail properties and has been involved in the development and management of over 7 million square feet of property. Tri-Land has completed nearly $325 million of redevelopment projects at over 40 shopping center locations throughout the Midwest and Mid-Atlantic states. Tri-Land and its affiliate, Tri-Land Developments, Inc., collectively currently manage a portfolio of ten (10) properties comprising over two million square feet, most of which are undergoing redevelopment in one fashion or another. The properties owned by Tri-Land affiliates are located in Georgia, Indiana, Kansas, Minnesota, Missouri and Wisconsin.

The Debtor's operational and profitability problems are principally due to the general economic problems facing this country over the last several years (particularly in real estate). Additionally, the Private Bank & Trust Company ("Private Bank"), the predecessor secured lender to RCG, imposed unreasonable terms for the extension of the maturity date of the underlying mortgage loan thereby triggering the necessity to file this Chapter 11 case. Despite these issues, the

Debtor generates substantial rental income at the Brywood Shopping Center that will enable it to comply with the financial requirements of the Plan.

## POST-PETITION ACTIVITIES

The continued administration of this Chapter 11 case has been primarily predicated upon the entry of a series of Cash Collateral Orders by the Bankruptcy Court. These Cash Collateral Orders established the framework for the continued operation of the Debtor's business and the terms under which the Debtor could use the cash and cash equivalents that serve as collateral to RCG and its predecessor, Private Bank. These Cash Collateral Orders were entered by the Bankruptcy Court on a consensual basis between the Debtor and the secured party.

The Debtor's Chapter 11 case was designated as a "single asset real estate case" within the meaning of Sections 101(51)(B) and 362(d)(3) of the Bankruptcy Code. As a result of this designation, the Debtor has made $756,137.48 in payments to RCG and Private Bank. These payments are referred to in the Plan as the "Post-Petition Payments."

The Debtor made several attempts to resolve the various issues with Private Bank during the pendency of the Debtor's Chapter 11 case. However, despite these efforts, Private Bank was unwilling to negotiate over the terms of a mortgage restructuring. As a result, no settlement was ever achieved with Private Bank. Once RCG acquired Private Bank's Claims in this Chapter 11 case, the Debtor also attempted to settle with RCG. However, these settlement efforts were also unsuccessful.

On or about December 10, 2012, Private Bank transferred its mortgage on the Brywood Shopping Center and its Claim against the Debtor to RCG. RCG acknowledged this transfer by filing a Notice of Assignment of Claim with the Bankruptcy Court. As a result of this transfer, RCG replaced Private Bank as the holder of the Class 1 Claim.

On February 26, 2013, the Debtor filed its Motion to Transfer Venue of its Chapter 11 case

-15-

from the Bankruptcy Court in Chicago, Illinois to this Court. RCG opposed this requested venue transfer. The grounds for the transfer of the Debtor's Chapter 11 case centered on a proposed global exit strategy for the Debtor and the Other Related Debtors[9] in the context of a Plan. Specifically, The Debtor and the Other Related Debtors intended to implement a coordinated exit strategy from the Chapter 11 cases under a joint plan of reorganization that was premised, in part, upon the substantive consolidation. After briefing and a hearing, the Bankruptcy Court in Chicago, Illinois overruled RCG's objections and granted the venue transfer of the Debtor's Chapter 11 case to this Court.

Under the first Plan, the Debtors proposed "deemed substantive consolidation" as the primary means for implementing an exit strategy from the Chapter 11 cases. The Bankruptcy Court conducted a hearing on the propriety of such a provision. On October 7, 2013, the Bankruptcy Court entered a Memorandum of Decision and Order Concerning Creditor's Objection to the "Deemed Substantive Consolidation" Provisions of the Debtor's Proposed Chapter 11 Plan ("Memorandum Opinion") in each of the Debtors' Chapter 11 cases. In the Memorandum Opinion, the Bankruptcy Court determined that "deemed substantive consolidation" is impermissible as proposed in the Plan. On October 16, 2013, the Debtors filed notices of appeals from this Memorandum Opinion ("Appeals").

After the filing of the Appeals, the Debtor and the Other Related Debtors filed a First Amended Joint Plan of Reorganization and supporting First Amended Joint Disclosure Statement ("First Amended Plan"). The Secured Lender in the Chapter 11 cases of the Other Related Debtors was MB Financial N.A. ("MB").    After extensive discovery and litigation among the Other

---

[9]The "Other Related Debtors" are: T-L Conyers LLC, Case No. 13-20280, T-L Smyrna LLC, Case No. 13-20282, T-L Cherokee South LLC, Case No. 13-20283 and T-L Village Green LLC, Case No. 13-20284.

Related Debtors and MB, the parties reached a settlement resolving all of the disputes among all of the Other Related Debtors and MB that resulted in, among other things, a voluntary dismissal of the Chapter 11 cases of the Other Related Debtors. As a result of this settlement, the Appeals were voluntarily dismissed and pursuit of Confirmation of the First Amended Plan became unnecessary.

The Bankruptcy Court scheduled a valuation hearing relating to the Brywood Shopping Center for March 4, 2015. Both the Debtor and RCG retained expert witnesses with respect to the issues in this valuation hearing. Before trial commenced, the Debtor and RCG entered into an Agreed Order which provided that the value of the Brywood Shopping Center as of January 23, 2015, was $8,350,000.00 ("Agreed Valuation Order"). The purpose of the entry of the Agreed Valuation Order was to relieve the parties of the necessity of completing discovery and participating in a trial over the value of the Brywood Shopping Center as of the date of the entry of the Agreed Valuation Order.

On or about April 3, 2015, RCG filed its original Competing Plan and supporting original Competing Disclosure Statement. The Debtor filed extensive objections to the original Competing Disclosure Statement.[10]  In light of the settlement among the Other Related Debtors and MB, the Debtor had to substantially revise the First Amended Plan. On August 26, 2015, the Bankruptcy Court entered an Order directing the Debtor and RCG to file Amended Plans of Reorganization and supporting Disclosure Statements. Thereafter, the Debtor and RCG agreed to resolve their objections to their respective Disclosure Statements and reserve their objections to Confirmation of their respective Plans for the simultaneous Confirmation hearing.

---

[10]RCG also filed objections to the approval of the Debtor's Disclosure Statement relating to the First Amended Plan.

-17-

## OTHER ASPECTS OF THE PLAN

Except as set forth below, management of the Debtor will remain unchanged after Confirmation of the Plan and the Debtor shall be the disbursing agent for the payments required under the Plan. Furthermore, Tri-Land, or its successor, shall continue to serve as the Debtor's agent for management, development and leasing of the property and shall be paid by the Debtor for such services in the same manner that Tri-Land has been historically paid by the Debtor.

Insiders will voluntarily subordinate any and all Claims that they have to the payment of Allowed Claims in Classes 1 through 6. Insiders' Claims (in the approximate aggregate amount of $836,371.00) will only be paid after all Allowed Claims in Classes 1 through 6 are paid pursuant to the Plan unless the holder of the Allowed Class 1 Claim agrees otherwise. The Insiders' willingness to voluntarily subordinate their Allowed Claims is limited to the context of the Plan.

Upon Confirmation, the Debtor shall be vested with its assets, subject only to the terms and conditions of this Plan. The Debtor shall be entitled to continue to operate and manage its business and financial affairs without further Order of this Court. Payments to creditors pursuant to the Plan will be made from existing cash deposits and from funds realized from continued business operations. If necessary, the Debtor will pay the Allowed Class 1 Claim from the proceeds of refinancing and/or the sale of the Brywood Shopping Center.

Upon Confirmation, an injunction under Section 524 of the Bankruptcy Code shall arise to prevent any party from foreclosing its lien or security interest or otherwise enforcing its Claims against the Debtor and its assets in this bankruptcy case except as authorized in the Plan. Such injunction shall not affect any secured creditor's right to foreclose upon any security interest provided in the Plan in the event of any post-Confirmation default under the Plan. This injunction

-18-

will remain in effect until all distributions under the Plan have been made.

The Plan is self-executing. Except as expressly set forth in the Plan, the Debtor shall not be required to execute any newly created documents to evidence the Claims, liens or terms of repayment to the holder of any Allowed Claim. However, the Debtor and Reorganized Debtor, and their respective designees, are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions, as the Debtor may deem necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan, or to otherwise comply with applicable law. The terms of this Plan will exclusively govern payments to creditors and any other rights of creditors as against the Debtor and its property. Furthermore, upon the completion of the payments required under this Plan to the holders of Allowed Claims, such Claims, and any liens that may support such Claims, shall be deemed released and discharged.

All executory contracts and unexpired leases which exist between the Debtor and any other party, whether such executory contract be in writing or oral, which has not been previously assumed, assigned, rejected or otherwise terminated by the Debtor shall be assumed upon Confirmation of the Plan pursuant to Sections 365 and 1123(b)(2) of the Bankruptcy Code. Any and all Claims asserted by any party arising from the rejection of executory contracts and unexpired leases pursuant to the Plan must be filed on or within thirty (30) days following the rejection. Further, with respect to Claims for default relating to any unexpired lease or executory contract that is assumed pursuant to the Plan, any and all such Claims must also be filed on or within thirty (30) days following Confirmation. Allowed Claims emanating from the rejection of unexpired leases and executory contracts will be treated as Class 5 Claims. Allowed Claims for default emanating from the

-19-

assumption of unexpired leases and executory contracts will be treated as Administrative Claims. Any person failing to file such a Claim within the time provided in the Plan shall be forever barred from asserting such Claim and shall not receive any distribution under the Plan. The provisions for assumption, assignment and rejection shall be equally applicable to executory contracts and unexpired leases of real and personal property.

The Bankruptcy Court shall retain jurisdiction for certain specified purposes. Any distribution under the Plan that remains unclaimed sixty (60) days after the distribution is made will become property of the Debtor, and will not be recouped in subsequent distributions. The Debtor will have the right to make any distribution to creditors earlier than required by the Plan. The Debtor shall have the right, power and authority after Confirmation to commence any preference, fraudulent conveyance or other litigation it deems appropriate. The Bankruptcy Court shall retain jurisdiction for such litigation.

The provisions of the Plan shall bind all creditors, Interest holders and parties in interest. Except as expressly provided in the Plan or the Bankruptcy Code, no interest or penalties accruing on or after March 12, 2012, shall be paid on any Claim nor shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest or penalty allowed for payment.

To the extent necessary, pursuant to Section 1129(b) of the Bankruptcy Code, the Debtor intends to request that the Bankruptcy Court confirm the Plan if all applicable requirements of Section 1129(a) of the Bankruptcy Code, other than Section 1129(a)(8), are met.

Each of the matters provided for under this Plan involving the corporate structure of the Debtor or Reorganized Debtor or any corporate action to be taken by or required of the Debtor or Reorganized Debtor shall be deemed to have occurred and be effective as of Confirmation, and

shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by partners, creditors, directors, or managers of the Debtor or the Reorganized Debtor.

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers from the Debtor to the Reorganized Debtor or to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or there similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local government officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

The Debtor and the Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan. Any and all statutory fees due to the United States Trustee from the Debtor shall be paid by the Debtor until the Bankruptcy Court enters an Order closing this Chapter 11 case.

## LIQUIDATION ANALYSIS

Failure of the Debtor to obtain Confirmation of the Plan could result in a forced liquidation or a conversion to a case under Chapter 7 of the Bankruptcy Code and immediate termination of the Debtor's business operations. Under the Plan, all creditors are being paid more than such creditors

would receive in such liquidation. With respect to the Allowed Secured Claim of RCG, RCG is being paid the value of its collateral plus interest as set forth in the Plan.

The Debtor estimates the value of the Brywood Shopping Center as follows:

| Debtor/Shopping Center | Value | Mortgage Debt |
|---|---|---|
| Brywood/ Brywood Shopping Center | $8,350,000.00[11] | $12,258,454.70 (as set forth in RCG's Proof of Claim) |

Notably, as of August 31, 2015, the Debtor had approximately $1,093,730.00 in cash on deposit in its Debtor in Possession operating account. Other than the Brywood Shopping Center, cash and various accounts receivable and personal property with an aggregate value of less than $100,000.00, the Debtor has no other assets. All such assets serve as collateral to RCG. Existing cash and further cash generated after Confirmation are to be used by the Debtor for payment of creditors' Claims under the Plan and for costs of operation of the Debtor's business after Confirmation of the Plan.

In the event of a forced liquidation, such as foreclosure by RCG on its liens and security interests, any proceeds realized from the liquidation of the Debtor's assets would first be used to pay the costs of collection, which for purposes of this discussion, the Debtor has estimated to be an amount equal to 10% of the gross collection proceeds. Once the costs of collection have been paid, Secured, Administrative and Priority Claims would be paid. Only after making the above disbursements of liquidation proceeds could any distribution be made to general Unsecured Creditors. Typically, in the event of a foreclosure, no creditor other than the mortgage lender (and perhaps real estate tax

---

[11]This amount is the amount set forth in the Agreed Valuation Order entered on January 23, 2015. The actual value of the Brywood Shopping Center as of Confirmation of the Plan is yet to be determined by the Bankruptcy Court. This valuation determination as of Confirmation will establish the value of the Brywood Shopping Center and the amounts of the Allowed Claims in Classes 1 and 3 for purposes of the Plan.

claimants) would receive funds from the foreclosure. The Debtor asserts that such a result should be expected in any foreclosure of the Brywood Shopping Center.

Clearly, the dividend being paid to all Unsecured Creditors under the Plan represents substantially more than such Unsecured Creditors would ever receive in a liquidation (which according to the above analysis is nothing). The same is also true for Secured Creditors with respect to their Allowed Secured Claims. Furthermore, the existing trade debt to be paid according to ordinary business terms would also be included in the pool of Administrative Claims thereby substantially increasing the total dollar amount due Administrative Claimants in a liquidation and further reducing the likelihood of any funds being available for Unsecured Creditors. Also, the projected amount allowable for Administrative Claims, in the event of conversion, would further increase to account for the fees and costs attributable to a Chapter 7 Trustee and his administration or Secured Creditors and the liquidation of their collateral. Finally, the voluntary subordination of Insiders' Claims can only be realized under the Plan.

Upon forced liquidation, Unsecured Creditors would get nothing. In fact, Secured Creditors would also likely receive substantially less than that being paid to them under the Plan. Accordingly, the Plan offers all creditors, including Secured Creditors, substantially more than such creditors would receive in a liquidation.

## IMPLEMENTATION OF THE PLAN

As discussed throughout this Disclosure Statement, distributions under the Plan shall be made from cash deposits existing at the time of Confirmation, from proceeds realized from the continued operation of the Debtor's business by the Debtor and, if necessary, from the proceeds of refinancing and/or sale of the Brywood Shopping Center. The Debtor expects to pay the balance of the Allowed Class 1 Claim in April 2021 as required in Article VI, Section 6.1 of the Plan from proceeds realized

from the refinancing or sale of the Brywood Shopping Center. The Debtor's ability to make the payments required under the Plan is further augmented by the ability of the Debtor to further redevelop The Brywood Shopping Center and provide for lease-up programs which will be funded from the new capital invested by the joint venture in an amount as much as $4,200,000.00.[12] This capital infusion is only available upon Confirmation of the Debtor's Plan.

## FEASIBILITY AND FAIRNESS OF PLAN

Attached to this Disclosure Statement as **Exhibits B through D** are financial statements pertaining to the Debtor's business activity for the periods ending December 31, 2012, December 31, 2013, and December 31, 2014. The purpose of these Exhibits is to provide creditors with historical financial information concerning the Debtor's ability to make the payments required under the Plan. These financial statements were prepared by the Debtor and are based upon an analysis of actual business activity during the stated periods.

Attached to this Disclosure Statement as **Exhibit E** are financial projections pertaining to the Debtor's projected business activity for the five (5) years following Confirmation of the Plan. In compiling these projections, the Debtor has assumed that the Plan will be confirmed by this Court in April 2016 and that the Effective Date of the Plan will be during the month of May 2016. The purpose of this Exhibit is to provide creditors with projected financial information concerning the Debtor's ability to make the payments required under the Plan. These projections were prepared by Tri-Land and the Debtor and are based upon an analysis of past business results and projected future business activity. These projections, coupled with the Debtor's available cash and vast experience in all aspects of commercial retail real estate, establish that the Plan is feasible.

---

[12] See, "Interests" section of this Disclosure Statement beginning at page 10.

The projections represent reasonable calculations based upon historical progressions of the Debtor's business. These projections clearly reflect the Debtor's ability to perform under the proposed Plan. Furthermore, the Debtor's achievements and performance during the course of this reorganization case further indicate that the Plan is feasible.

After Confirmation of the Plan, the Debtor will operate its business in the ordinary course. Payments to creditors pursuant to the Plan will be made from funds realized from continued business operations, from existing cash deposits and cash resources of the Debtor and/or the sale and/or refinancing of Brywood Shopping Center. Importantly, the joint venture described in Article VI, Section 6.6 of the Plan will be investing up to $4,200,000.00 in new capital to fund certain projected capital expenditures and deferred maintenance at Brywood Shopping Center and to further develop Brywood Shopping Center after Confirmation of the Plan.

## RCG'S COMPETING PLAN

The Debtor asserts that RCG's Competing Plan is legally unconfirmable under Section 1129 of the Bankruptcy Code. Furthermore, the Debtor asserts that the Debtor's Plan provides for greater, more certain recoveries for creditors than are provided for in RCG's Competing Plan. The Debtor intends on objecting to Confirmation of RCG"s Competing Plan.

## RECOMMENDATION

The Debtor believes that its Plan represents an opportunity for the holders of Allowed Claims, including Secured Creditors, to receive substantially more than such claimants would receive in a forced liquidation or under RCG's Competing Plan. Given the conservative financial projections, the Debtor's past performance, and the funding commitment of the joint venture to provide as much as $4,200,000.00 to further develop, lease and maintain Brywood Shopping Center, the Plan is also fair.

The Debtor strongly recommends that those persons entitled to vote, vote to accept the Debtor's Plan.

Respectfully Submitted,
T-L BRYWOOD LLC,
Debtor/Debtor-in-Possession

By: /s/ David K. Welch
One of Its Attorneys

**DEBTOR'S COUNSEL**:
David K. Welch, Esq. (Illinois Atty. No. 06183621)
Arthur G. Simon, Esq. (Illinois Atty. No. 03124481)
Jeffrey C. Dan, Esq. (Illinois Atty. No. 06242750)
Brian P. Welch, Esq. (Illinois Atty. No. 6307292)
Crane, Heyman, Simon, Welch & Clar
135 South LaSalle Street, Suite 3705, Chicago
W:\GRACE\Brywood\Debtors Third Amended Discl Stmnt\Disclosure Statement.Third.Amended.Brywood.1-12-16.FINAL.wpd